IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SCOTT A. BRUNO,

             Plaintiff,

        v.

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security
Administration,

             Defendant.

_____

Civ. No. 6:12-cv-02030-MC

OPINION AND ORDER

MCSHANE, Judge:

Plaintiff Scott A. Bruno brings this action for judicial review of the Commissioner's decision denying plaintiff's application for supplemental security income. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

Plaintiff filed an application for benefits on January 29, 2010. The administrative law judge (ALJ) determined plaintiff is not disabled. TR 22.[1] The ALJ erred in rejecting the opinion of Dr. Mohler, the treating orthopedic surgeon, and in finding plaintiff not credible. For the reasons stated below, the Commissioner's decision is REVERSED and this matter is remanded for payment of benefits.

---

[1] "TR" refers to the Transcript of Social Security Administrative Record [#7] provided by the Commissioner.

1 – OPINION AND ORDER

**STANDARD OF REVIEW**

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

**DISCUSSION**

The Social Security Administration utilizes a five step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520 & 416.920 (2012). The initial burden of proof rests upon the claimant to meet the first four steps. If claimant satisfies his or her burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner's burden is to demonstrate that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id.*

At step two, the ALJ found plaintiff's "chronic pain status post left hip fracture repair, morbid obesity, mood disorder NOS, and history of significant polysubstance dependence with ongoing alcohol abuse" qualified as "severe" impairments under the regulations. TR 12.

The ALJ found plaintiff had the residual functional capacity (RFC) to peform sedentary work, with no more than occasional postural activities while avoiding concentrated exposure to extreme cold and workplace hazards. TR 14. The ALJ also limited plaintiff to performing simple, routine tasks consistent with entry-level work, which does not involve more than occasional contact with the public. Id. A vocational expert testified that a person with the RFC as stated by the ALJ could work as an eyeglass frame polisher or toy stuffer. The ALJ determined plaintiff was not disabled under the Social Security Act. TR 22.

Plaintiff argues the ALJ erred in weighing certain medical opinions and in determining plaintiff was not credible. I agree.

**Dr. Mohler's Opinion**

Where there exists conflicting medical evidence, the ALJ is charged with determining credibility and resolving any conflicts. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence…." *Id.* (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

On July 19, 2010, Dr. Mohler, plaintiff's treating orthopedic surgeon, wrote a letter on plaintiff's behalf. TR 326. The letter stated Dr. Mohler's opinion that plaintiff suffers chronic pain in his hip following a partial hip replacement 20 years earlier. *Id.* Dr. Mohler opined plaintiff "is unable to work at his previous job at the mill. Furthermore, he is unable to work at this time at any job because he has recurrent subluxations of the left hip, making it impossible to

3 – OPINION AND ORDER

sit or stand at a job." *Id.* The ALJ gave little weight to Dr. Mohler's opinion that plaintiff could not work because plaintiff could not sit or stand. TR 18.

When Dr. Mohler examined plaintiff in January 2007, X-rays showed "dissociation of the bipolar hemiarthroplasty with separation of the femoral head from the bipolar hemiarthroplasty." TR 208. Six days later, X-rays revealed the femoral head had "reduced into the bipolar component." *Id.* Dr. Mohler concluded plaintiff would benefit from a metal-to-metal hip replacement. TR 209. Based on concerns about infections due to plaintiff's history of IV drug abuse, Dr. Mohler held off on recommending surgery at that time.

When Dr. Mohler treated plaintiff in 2010, plaintiff continued to have hip problems. Once again, due to concerns over a risk of serious infection, Dr. Mohler recommended holding off on surgery. TR 329. Dr. Mohler noted plaintiff likely suffered from recurrent hip subluxations. *Id.* Once again, Dr. Mohler stated his unequivocal opinion that plaintiff would benefit from hip replacement surgery. *Id.*

Regarding Dr. Mohler's opinion, the ALJ concluded:

> The undersigned gives little weight to the brief note Dr. Mohler wrote on the claimant's behalf. Dr. Mohler decided in the past that the claimant's condition was stable enough that they could wait for him to attain full, sustained sobriety from his drug addiction. The imaging studies since that time reflect no new changes, including that there was no loosening of the componenets. Physical examination findings since Dr. Mohler decided the claimant could function well enough without surgery remained comparable to findings at that time. While Dr. Mohler's suggestion that the claimant would benefit from revision of his partial hip replacement into a total hip replacement may be true, that does not in and of itself support a claim for disability. Dr. Mohler failed to provide a rationale for his conclusion that the claimant could not sit or stand at work.

TR 18.

Dr. Mohler's reluctance to schedule immediate surgery was due not to a belief that plaintiff could work absent such surgery, but rather to legitimate concerns of plaintiff contracting

4 – OPINION AND ORDER

a serious infection. Dr. Mohler diagnosed plaintiff with mechanical hip failure. TR 209. Dr. Mohler noted he discussed this "very difficult problem" with plaintiff "in detail." TR 209. Despite plaintiff's hip failure, Dr. Mohler's "serious concerns about avoiding an infection" overrode plaintiff's need for surgery. *Id.* Dr. Mohler also opined that until plaintiff could undergo surgery, he would continue to have problems with his hip. Plaintiff left that appointment with orders to continue using crutches, TR 209, as he walked "with an antalgic gait favoring the left hip," TR 208. The ALJ erred in using Dr. Mohler's concerns of a serious infection to justify according little weight to Dr. Mohler's opinion that plaintiff could not sit or stand to work.

The ALJ emphasizes objective imaging evidence demonstrated plaintiff's hip had not loosened. Dr. Mohler, however, specifically noted "There is no loosening of the components." TR 329. Dr. Mohler considered the fact that there was no loosening prior to determining it was "impossible" for plaintiff to sit or stand at work. Dr. Mohler also noted "there is osteolysis around acetabulum and secondary degenerative changes are also present in the left hip joint." TR 329. Dr. Mohler was plaintiff's treating specialist, treating plaintiff on multiple occasions over the time period at issue.

The ALJ repeatedly emphasizes that there is no objective evidence that plaintiff in fact suffers from hip subluxations. X-rays from 2006 confirmed plaintiff suffered a dislocated hip. TR 208, 232. The ALJ emphasizes that no doctor was able to reproduce plaintiff's subluxations. While that may be so, it is not a valid reason for rejecting plaintiff's own testimony or that of the treating specialist. Not every randomly recurring ailment is reproducible during examination, especially when those examinations are somewhat few and far between. And while the ALJ was certainly correct in noting that not every individual in need of a hip replacement qualifies for disability benefits, the treating specialist here opined plaintiff could neither sit nor stand for a

5 – OPINION AND ORDER

long enough period to perform work. That specialist had access to all the imaging results, saw plaintiff on multiple occasions over several years, specifically noted there was no loosening of the components, and still concluded that due to recurrent subluxations of the hip, it would be "impossible" for plaintiff to sit or stand at a job. TR 326.

In short, the ALJ failed to provide specific and legitimate reasons for giving Dr. Mohler's opinion little weight. Dr. Mohler's opinion as a treating physician is generally entitled to greater weight than that of an examining, non-treating physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). In fact, as a specialist in the area of critical importance to any determination of whether plaintiff is disabled, Dr. Mohler's opinion is entitled to greater weight than any of the other physicians in the record. *Benecke v. Barnhart*, 379 F.3d 587, 594 n.4 (9th Cir. 2004). Despite noting no loosening of components, Dr. Mohler opined plaintiff suffered "chronic left hip pain from the replacement" and, due to recurrent hip subluxations, was unable to sit or stand long enough to work. TR 326. That opinion is entitled to greater weight than any other medical opinion in the record here. *Benecke*, 379 F.3d at 594 n.4.

**The ALJ's Adverse Credibility Determination**

In making an adverse credibility determination regarding plaintiff's subjective reporting on the severity of his symptoms, the ALJ was required to provide "specific, clear and convincing reasons" for rejecting plaintiff's testimony. *Vasquez v. Astrue*, 572, F.3d 586, 591 (9th Cir. 2009) (quoting *Smolen v. Charter*, 80 F.3d 1273, 1282 (9th Cir. 1996)).

The ALJ found plaintiff not entirely credible, noting that "[t]he objective findings of multiple medical sources failed to explain the claimant's subjective reports." TR 20. The ALJ appears to base that conclusion solely on the fact that plaintiff's hip never dislocated during an examination by a physician. Although plaintiff concedes he "has no current x-ray evidence of a

6 – OPINION AND ORDER

subluxation," Pl.'s Reply, 4, it is undisputed that plaintiff suffered a hip dislocation in late 2006. As noted, plaintiff's treating specialist concluded plaintiff would benefit from a hip replacement. TR 329. The state examining physician agreed plaintiff needed a cane to ambulate. TR 275. All of the medical evidence overwhelmingly demonstrates plaintiff suffers from a bad left hip. As noted above, that plaintiff's hip never dislocated during an examination is not a legitimate reason to conclude plaintiff did not suffer subluxations.

The ALJ also found plaintiff had been "evasive" regarding his drug use. TR 20. Nothing in the record indicates plaintiff ever intentionally misrepresented his drug use. In April 2010, Dr. Perry reported plaintiff quit using heroin 10 years previously. TR 272. In September 2007, plaintiff told his primary care physician that since exiting the methadone program, he had been using heroin "regularly." TR 261. Although an ALJ may use inconsistent or less-than-candid statements by a claimant in assessing a claimant's credibility, *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008), the record as a whole demonstrates plaintiff was generally consistent and, although not always in his best interest, entirely candid when reporting his drug use. In 2010, plaintiff told Dr. Fedorov he had not used heroin in three years. TR 320. Around that same time, plaintiff reported being "clean for the past 2 years." TR 327. Other than the Dr. Perry's note about being ten years off of heroin, plaintiff's reporting, including at the hearing before the ALJ, TR 45, has been anything other than "evasive." The ALJ's finding that plaintiff was at times "evasive" about his drug use is not supported by substantial evidence in the record, and is not a legitimate reason to find plaintiff less-than credible.

The ALJ may look to an unexplained failure to seek or follow a prescribed course of treatment in determining a claimant's credibility. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Here, the ALJ noted plaintiff did not elect hip replacement in part because he was

7 – OPINION AND ORDER

homeless and lacked a safe place to recuperate. Although plaintiff was aware, in a very general sense, of agencies that could help provide housing, plaintiff had no income and reasonably believed the agency would not provide zero cost housing. TR 20, 42-44. At the hearing, the ALJ inferred that because plaintiff was familiar with the social security process, plaintiff should have realized free housing was available and should have at least asked about free housing. TR 42-44. Hip surgery is major surgery with an extended period of recovery. Plaintiff would be bedridden for several weeks following surgery. Additionally, there were legitimate concerns that plaintiff would contract a serious infection. Plaintiff testified that although he was aware of section eight housing, it was his understanding that the agency would not pay the full cost of housing. TR 43. Plaintiff's girlfriend, who was on subsidized housing for years, informed plaintiff he could not receive zero cost housing. TR 44. Plaintiff, being homeless and unemployed, could not afford even $50 per month for housing, even if plaintiff was "lucky" enough to make that much. TR 43. That plaintiff did not specifically apply for free housing that he believed to be unavailable is not a legitimate reason to find plaintiff less-than credible.

The ALJ found plaintiff exaggerated certain mental health symptoms, stating, "His description of mental symptoms was inconsistent. For example, he told Dr. Prescott that he had visual and auditory hallucinations, but he denied such symptoms at the hearing. Given that he never underwent any mental health treatment, such symptoms should not have simply disappeared." TR 20. Plaintiff, however, took Zyprexa as prescribed specifically for his hallucinations. TR 280. Plaintiff reported the "hallucinations are better with Zyprexa." The psychologist opined plaintiff "was very credible with regard to his symptom report." TR 282. The transcript of the hearing demonstrates some misunderstanding on the part of the ALJ. In response to a question about hearing voices, plaintiff stated he does not specifically hear "voices

8 – OPINION AND ORDER

really, it's more just you know thoughts in my mind." TR 37. Plaintiff also explained that

although he did not suffer such thoughts all the time, he continued to have "slight schizoid type

problem[s]", TR 32, which involved thoughts of people he never saw before who followed him

and wanted to hurt him, TR 33.

 The ALJ misrepresented plaintiff's testimony from the hearing. Additionally, plaintiff

took Zyprexa as prescribed specifically for hallucinations. Finding plaintiff less-than credible

because his mental problems vanished without explanation is not supported by the record.

 On a related note, the ALJ erred in rejecting the opinion of Alison Prescott, Ph.D. Dr.

Prescott concluded plaintiff "was very credible with regard to his symptom report." TR 282. The

ALJ rejected Dr. Prescott's diagnosis largely because it was based on plaintiff's self-reporting.

As discussed above, the ALJ erred in finding plaintiff less-than credible. Therefore, the ALJ's

basis for rejecting Dr. Prescott's opinion is not supported by the record.

 The ALJ failed to provide "specific, clear and convincing reasons" for rejecting

plaintiff's testimony. *Vasquez*, 572, F.3d at 591. When the ALJ makes an improper adverse

credibility determination, the district court may credit the testimony as true. *Benecke v. Barnhart*,

379 F.3d 587, 593 (9th Cir. 2004). The court has discretion to remand either for further

proceedings or an award of benefits. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).

 In the Ninth Circuit:

> Remand for further administrative proceedings is appropriate if enhancement of
> the record would be useful. Conversely, where the record has been developed
> fully and further administrative proceedings would serve no useful purpose, the
> district court should remand for an immediate award of benefits. More
> specifically, the district court should credit evidence that was rejected during the
> administrative process and remand for an immediate award of benefits if (1) the
> ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2)
> there are no outstanding issues that must be resolved before a determination of

9 – OPINION AND ORDER

disability can be made; and (3) it is clear from the record that the ALJ would be
required to find the claimant disabled were such evidence credited.

*Benecke*, 379 F.3d at 593.

It is clear that this matter should be remanded for an immediate award of benefits. The
ALJ erroneous discredited plaintiff's testimony regarding recurrent hip subluxations. The record
is fully developed. If Dr. Mohler's opinion that plaintiff's recurrent subluxations make it
impossible for plaintiff to sit or stand at a job is accorded the proper weight, the ALJ would be
required to find plaintiff disabled. Plaintiff's testimony, combined with Dr. Mohler's opinion,
would necessarily result in a finding that plaintiff cannot perform even sedentary work.
Therefore, this is one of the unusual circumstances where remand for payment of benefits is
appropriate even without testimony from a vocational expert. *Id*. at 595.

## <u>CONCLUSION</u>

The Commissioner's erred in making an adverse credibility determination and in
weighing the medical opinions. The Commissioner's final decision is therefore REVERSED and
REMANDED for an award of benefits pursuant to sentence four of 42 U.S.C. § 405(g).
IT IS SO ORDERED.


DATED this 7th day of March, 2014.


_____ /s/ Michael J. McShane _____
Michael McShane
United States District Judge


10 – OPINION AND ORDER